# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

| | |
|---|---|
| In re:<br><br>**SPRINGFIELD MEDICAL CARE SYSTEMS, INC.,**<br><br>Debtor. | Chapter 11<br><br>Case No. 19-10285 |
| **SPRINGFIELD MEDICAL CARE SYSTEMS, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**JOVITA CARRANZA, in her capacity as ADMINISTRATOR for the U.S. SMALL BUSINESS ADMINISTRATION,**<br><br>Defendant. | Adversary No. 20-_____ |

## VERIFIED COMPLAINT

Springfield Medical Care Systems, Inc., the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), by and through undersigned counsel, hereby complains against the United States Small Business Administration (the "SBA"), acting through Jovita Carranza, in her capacity as the Administrator of the SBA (the "Administrator"), as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The Debtor consents to the entry of final orders by this Court in this adversary proceeding.

## PARTIES

5. The Debtor is a non-profit Vermont business corporation headquartered in Springfield, Vermont. The Debtor provides medical services to communities in southeastern Vermont and southwestern New Hampshire through its operation of thirteen federally qualified health centers ("FQHC") located in Ludlow, Chester, Bellow Falls, Londonderry, and Springfield, Vermont, and Charlestown, New Hampshire. The Debtor also operates two non-FQHC daycare sites in Bellows Falls and Springfield, Vermont.

6. The Administrator can sue and be sued on behalf of the SBA in any court of general jurisdiction. See 15 U.S.C. § 634(b).

## GENERAL BACKGROUND

7. On June 26, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code, which commenced the above-captioned chapter 11 case pending before this Court.

8. No trustee has been appointed in the Debtor's chapter 11 case.

9. The Debtor continues to operate its businesses as a debtor-in-possession.

10. On March 23, 2020, the Debtor filed in its chapter 11 case its Novel Coronavirus Status Update and Request for Status Conference [Case No. 19-10285, D.E. 340] (the "Coronavirus Update"), and on April 17, 2020, the Debtor filed its Status Report [Case No. 19-10285, D.E. 357] (the "Status Report"). The Debtor incorporates by reference the Coronavirus Update and Status Report as if fully restated herein.

11. Nearly all of the Debtor's revenue is derived from outpatient procedures and non-

essential office visits or medical procedures. Following recommendations and/or orders from the federal Centers for Disease Control and the State of Vermont, non-essential medical procedures and office visits have been postponed, rescheduled, or canceled. These cancellations and deferrals have had—and are expected to continue to have—a negative impact on the Debtor's cash receipts.

12. On or about March 27, 2020, Congress passed, and the President signed, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").

13. The CARES Act included stimulus funds designed to assist businesses and ensure that American workers continue to be paid despite the economic impact of Covid-19, stay-at-home orders, and other social distancing measures.

14. Section 1102 of the CARES Act established the Paycheck Protection Program (the "PPP") as a convertible loan program under § 7(a) of the Small Business Act, codified in 15 U.S.C § 636. Although nominally called a "loan" program, PPP disbursements actually become grants—with no repayment obligations—if, among other requirements, 75% of the PPP funds are used for payroll and wage expenses. A party can obtain funds under the PPP by applying through a federally insured participating lender using an application form created by the SBA, and the SBA will guarantee the loan if it is approved.

15. On or about April 2, 2020, the SBA released the application form to be used when applying for funds from the PPP. Other than filling out the official form, there is no underwriting, and the Administrator is relying upon the assistance of qualified commercial lenders to administer the PPP.

16. Section 1102 of the CARES Act does not prohibit extending funds under the PPP to a chapter 11 debtor. However, the first question on the PPP application form asks whether "the Applicant . . . [is] presently involved in any bankruptcy[.]" The second question on the official

3

PPP application form asks whether "the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government?" The official form of application also states: "If questions (1) or (2) below are answered 'Yes,' the loan will not be approved."

17. An interim final rule proposed on April 15, 2020 (the "April 15 Rule") stated that "[t]he program requirements of the PPP identified in this rule temporarily supersede any conflicting Loan Program Requirement (as defined in 13 CFR 120.10)." The April 15 Rule contained no exclusion for debtors.

18. On April 21, 2020, the Debtor, through its acting Chief Executive Officer, Joshua Dufresne, contacted one of its commercial banking institutions, Mascoma Bank ("Mascoma"), regarding the Debtor's application for a PPP loan. The Debtor was informed by a representative of Mascoma via e-mail that same day that Mascoma was "informed from the SBA that business customers currently in bankruptcy are ineligible." A true and correct copy of the April 21, 2020 e-mail from Mascoma is attached hereto as **Exhibit A** and is incorporated herein by reference. Thus, the Debtor was prohibited from having an application processed for a PPP loan based solely on its status as a debtor. In other words, the Debtor's application was denied by the SBA as ineligible before it could even be submitted or reviewed.

19. On April 24, 2020, the SBA promulgated an interim final rule (the "April 24 Rule") with respect to the PPP. The April 24 Rule states that "[i]f the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan." The stated basis for this rule is that the Administrator "determined that providing PPP loans to debtors

4

in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans." A copy of the April 24 Rule, which is not yet final, is attached as **Exhibit B**.

20. The Debtor intended its request for PPP funds to ensure that the funds will be treated as a grant and be forgivable. The amount of the Debtor's request is **$1,808,687**. To the extent, however, that the Debtor's application is approved in the future and any portion of the funds requested by the Debtor would exceed the amount to be forgiven, the Debtor intends to immediately repay that amount.

21. Upon information and belief, and consistent with the e-mail at **Exhibit A**, the SBA has advised Mascoma not to process any PPP application from the Debtor on the basis that the Debtor's answer of "yes" to question 1 on the application is a self-certification that the Debtor was and remains ineligible for the PPP in the view of the SBA.

22. The Debtor's experience with Mascoma and understanding that its application is ineligible to be processed is consistent with the experience of other chapter 11 healthcare debtors. On note, by e-mail dated April 13, 2020, Berkshire Bank advised Springfield Hospital, Inc. (the "Hospital"), an affiliated entity of the Debtor, that Berkshire Bank has denied the Hospital's PPP application based on the Hospital's status as a chapter 11 debtor and "yes" answer to question 1 on the PPP application form. A copy of that e-mail is attached hereto as **Exhibit C** and incorporated herein by reference.

23. The PPP funds are available to approved applicants on a first come, first served basis. Upon information and belief, absent the relief sought herein, the Debtor's application was not and will not be processed because the Debtor answered "yes" to being in bankruptcy on its application. And while the Debtor's application remains denied and ineligible, other applicants

will receive PPP funds, further depleting the finite amount of available funds until they run out.

24. The Debtor has not received any funds through the PPP.

25. The Debtor is an eligible borrower under the PPP, and the Debtor seeks to ensure that adequate funds are available under the second tranche of PPP funding once the SBA's discrimination in contravention to § 525(a) of the Bankruptcy Code is resolved, the Debtor's request for PPP funding is processed, and the deadline for any and all administrative and judicial remedies has expired.

26. Upon information and belief, Mascoma will advance funds through the PPP if an application by the Debtor is allowed to be processed and approved as meeting the SBA's requirements.

27. The Debtor projects that it will run out of money to pay operating expenses in the near term if it is unable to obtain funds from the PPP or other sources.  And to the extent any other sources of funding become available, such financing is likely to be on less favorable terms than the forgivable PPP loan would provide, which imposes an additional strain on the Debtor's cash flow due to the obligation to repay the other potential short-term financing that the Debtor might obtain.  Without adequate funding for operations, including possibly through the PPP, the Debtor will be forced to close its businesses and lay off employees, and the Debtor will not have sufficient funds for an orderly wind-down.  This would cause irreparable harm to the Debtor, as well as to creditors of the Debtor and its estate.

28. The timeline in the prior paragraph could accelerate from a widespread outbreak of Covid-19 in the Debtor's service area, further restrictions on the Debtor's operating abilities in the coming weeks, or the unavailability of additional grant or loan programs.

## COUNT I

### (Preliminary and Permanent Injunction)

29. The Debtor incorporates the allegations of each of the prior paragraphs as if set forth fully herein.

30. The Debtor is entitled to seek relief against the Administrator and all those acting in concert with her under Rule 65 of the Federal Rules of Civil Procedure, which is applicable to this adversary proceeding pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure.

31. There is no prohibition in the CARES Act or under § 7(a) of the Small Business Act prohibiting lending to debtors in chapter 11.

32. Moreover, the CARES Act specifically waives all underwriting considerations under § 7(a) of the Small Business Act.

33. The Debtor is likely to prevail on the merits of its claims for an injunction and declaratory relief.

34. The balance of hardships favors issuing preliminary injunctive relief. The inability to obtain PPP funds could cause the Debtor to suffer immediate and irreparable harm by forcing the Debtor to cease operations and liquidate.

35. Preliminary and permanent injunctive relief while this matter is pending will not harm the Administrator.

36. The Debtor seeks an order enjoining the SBA or any commercial lender provided notice of the Court's order, see Fed. R. Civ. P. 65(d)(2)(C), from: (i) denying an application under the PPP on the basis that the applicant is a debtor in bankruptcy; and (ii) requiring that an application of a debtor, including the Debtor, to participate in the PPP must be considered without the words "or presently involved in any bankruptcy" being considered.

37. Due to the first come, first served nature of the PPP appropriations, the Debtor further seeks an order enjoining the SBA from issuing loan guaranties or approving PPP applications in an amount that would leave insufficient funds for the Debtor's funding pursuant to its application until the Debtor's claims in this Complaint are resolved.

## COUNT II

**(Declaratory Relief)**

38. The Debtor incorporates each of the prior paragraphs as if set forth fully herein.

39. The Debtor is entitled to seek declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 7001(9) of the Federal Rules of Bankruptcy Procedure.

40. Neither the CARES Act, nor the Small Business Act, prohibit disbursements under the PPP to the Debtor based on its status as a debtor under chapter 11 of the Bankruptcy Code.

41. The Debtor has a legal right to apply for funds under the PPP and to have its application considered on the same terms as other applicants without regard to its status as a debtor under chapter 11 of the Bankruptcy Code.

42. By prohibiting Mascoma or other authorized lenders from processing an application from the Debtor, and by prohibiting disbursements to debtors under the PPP, the Administrator has exceeded her statutory authority.

43. The Debtor is entitled to a declaratory judgment that the CARES Act requires the SBA to consider, process, and approve the Debtor's application or any subsequent application from the Debtor on the same terms as other qualified businesses that are not presently debtors in cases arising under the Bankruptcy Code.

## COUNT III

**(11 U.S.C. § 525(a))**

44.     The Debtor incorporates each of the prior paragraphs as if set forth fully herein.

45.     Section 525(a) of the Bankruptcy Code prohibits the federal government from discriminating against a person based on that person's status as a debtor with respect to a "license, permit, charter, franchise, or other similar grant[.]"  11 U.S.C. § 525(a).

46.     The Debtor is a debtor in a case under chapter 11 of the Bankruptcy Code.

47.     The PPP constitutes a federal program within the meaning of § 525(a) of the Bankruptcy Code in that the program is designed to provide forgivable loans to qualified businesses that are akin to grants.

48.     The Debtor is a small business within the meaning of the CARES Act and is eligible to participate in the funding of forgivable loans, which are functionally grants, under the PPP.

49.     The Debtor has sized the amount of its PPP funding request to be forgivable and, to the extent any funds would not qualify for forgiveness, intends to immediately repay the excess amount (and there is no prepayment penalty under the PPP).

50.     The e-mails attached hereto as **Exhibit A** and **Exhibit C**, the bankruptcy-related question on the application, and the April 24 Rule demonstrate that the SBA has violated § 525(a) of the Bankruptcy Code with respect to the Debtor.

51.     The SBA has violated § 525(a) of the Bankruptcy Code for the reasons stated in this Complaint.

## COUNT IV

**(Mandamus – 28 U.S.C. § 1361)**

52.     The Debtor incorporates each of the prior paragraphs as if set forth fully herein.

9

53. The Administrator has a duty to implement the laws enacted by Congress. This non-discretionary duty includes implementing the PPP in a manner that does not violate § 525(a) of the Bankruptcy Code.

54. The Administrator has breached this duty.

55. The Debtor has the right to have its application for funds pursuant to the PPP considered without discrimination based on the Debtor's status as a bankruptcy debtor.

56. The Administrator has no discretion to discriminate against the Debtor based on its status as a debtor in bankruptcy.

57. Upon information and belief, there are no administrative remedies available to the Debtor at this time. The Debtor is not aware of any lender, including Mascoma, agreeing or having the ability to waive or otherwise relax the SBA's requirements and disqualification under the PPP of applicants that are debtors in a bankruptcy case. The Debtor further bases this belief on the experience and allegations of other chapter 11 debtors, including that the Hospital had its PPP application denied, and that Penobscot Valley Hospital has filed a complaint in its chapter 11 case stating that it has a similar belief based on communications between Congressional staff and the SBA. See Complaint, Penobscot Valley Hospital v. Carranza (In re Penobscot Valley Hospital), Adv. Pro. No. 20-1005, D.E. 1 (Bankr. D. Me.).

**RELIEF REQUESTED**

With respect to **Count I**, the Debtor seeks the following relief:

(A) A preliminary injunction enjoining the SBA or any commercial lender from denying an application under the PPP on the basis that the applicant is a debtor in bankruptcy or because of the words "or presently in bankruptcy" on the PPP application. The Debtor requests that this relief be granted until such time as a final

          judgment is entered on its claims in Count II, Count III, and Count IV;

(B)    A preliminary injunction enjoining the SBA from issuing loan guaranties or approving PPP applications in an amount that would leave insufficient funds for the Debtor's funding pursuant to the Debtor's application until entry of final judgment on the Debtor's Claims in Count II, Count III, and Count IV; and

(C)    Permanent injunctive relief with respect to the relief in the two immediately preceding sub-paragraphs.

With respect to **Count II**, the Debtor seeks the following relief:

(A)    That the Court enter a declaratory judgment that the CARES Act does not prohibit the Debtor's application from being considered on the same terms as other qualified business that are not debtors in cases arising under the Bankruptcy Code and which are also seeking PPP funding.

With respect to **Count III**, the Debtor seeks the following relief:

(A)    A determination that the SBA has violated § 525(a) of the Bankruptcy Code with respect to the Debtor's application;

(B)    A determination that the SBA has violated § 525(a) of the Bankruptcy Code by issuing its interim final rule on April 24, 2020, and promulgating a PPP application form excluding debtors; and

(C)    Damages in an amount not less than **$1,808,687** in the event that the Court does not grant the relief requested in Count I on a temporary or preliminary basis and it is later determined that the Debtor was eligible for PPP funds but no such funds remain available.

With respect to **Count IV**, the Debtor seeks the following relief:

11

(A)     Entry of judgment directing the Administrator to process any application of the Debtor under the PPP without discriminating against the Debtor based on its status as a debtor in bankruptcy; and

(B)     Damages in an amount not less than **$1,808,687** in the event that this Court does not grant the relief requested in Count I on a temporary or preliminary basis and it is later determined that the Debtor was eligible for PPP funds but no such funds remain available.

With respect to Count I, Count II, Count III, and Count IV, the Debtor requests that it be awarded attorneys' fees and costs pursuant to 28 U.S.C. § 2412(b).

Date: April 29, 2020

/s/ D. Sam Anderson
D. Sam Anderson, Esq.
Adam R. Prescott, Esq.
BERNSTEIN SHUR
100 Middle Street
P.O. Box 9729
Portland, Maine 04104-5029
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

Attorneys for Springfield Medical Care Systems, Inc.

## VERIFICATION

I, Joshua Dufresne, am the acting Chief Executive Officer of Springfield Medical Care Systems, Inc. and declare under penalty of perjury under the laws of the United States of America that the allegations in paragraphs 5, 7, 8, 9, 10, 11, 18, 20, 21, 22, 23, 24, 25, 26, 27, 28, and 57 of the foregoing Complaint are true and accurate, to the best of my knowledge and belief, and, if not based on my own personal knowledge, that I believe such allegations to be true and correct.

Dated: 4 29, 2020

By: _____
Joshua R. Dufresne
Acting Chief Executive Officer
Springfield Medical Care Systems, Inc.
25 Ridgewood Road
Springfield, VT 05156
(802) 885-2151
jdufresne@springfieldmed.org

13