*Formatted for Electronic Distribution* *For Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT



Filed & Entered
On Docket
07/31/2020

_____

**In re:**

    **Springfield Hospital, Inc.,**             Chapter 11 Case
          Debtor-in-Possession.             # 19-10283
_____

**In re:**

    **Springfield Hospital, Inc.,**
        Plaintiff,
          v.                                                Adversary Proceeding
**Jovita Carranza, in her capacity as**             # 20-01003
**Administrator for the U.S. Small**
**Business Administration,**
        Defendant.
_____

**In re:**

    **Springfield Medical Care Systems, Inc.,**          Chapter 11 Case
        Debtor-in-Possession.                 # 19-10285
_____

**In re:**

    **Springfield Medical Care Systems, Inc.,**
        Plaintiff,
          v.                                           Adversary Proceeding
**Jovita Carranza, in her capacity as**             # 20-01004
**Administrator for the U.S. Small**
**Business Administration,**
        Defendant.
_____

*Appearances:*  Andrew Helman, Esq.                      Michael Tye, Esq.
                   Murray, Plumb & Murray                U.S. Department of Justice
                   Portland, ME                              Washington, DC
                   For Springfield Hospital                  For the Defendant

                   D. Sam Anderson & Adam R. Prescott, Esq.      Melissa A. D. Ranaldo, Esq.
                   Bernstein, Shur, Sawyer & Nelson, P.A.          U.S. Attorney's Office – Vermont
                   Portland, ME                              Burlington, Vermont
                   For Springfield Medical Care Systems         For the Defendant

## MEMORANDUM OF DECISION
### CERTIFYING DECISION FOR DIRECT APPEAL UNDER 28 U.S.C. § 158(d)(2)

On the afternoon of July 27, 2020, Springfield Hospital, Inc. (the "Hospital") and Springfield Medical Care Systems, Inc. ("SMCS") (together, the "Plaintiffs") filed a joint request, pursuant to 28 U.S.C. § 158(d)(2)(A) (the "Request"), asking the Court to certify its memorandum of decision and order (together, the "Decision") (doc. ## 63, 64 in the Hospital proceeding[1]), and the Defendant's appeal of that Decision, for direct appeal to the United States Court of Appeals for the Second Circuit. The Decision granted summary judgment and a permanent injunction to the Plaintiffs on the § 525 claims they had raised. The Plaintiffs argue the Decision is appropriate for direct appeal because it establishes all three statutory eligibility requirements. First, it involves both (a) a question of law as to which there is no controlling Second Circuit decision and (b) a matter of public importance. Second, the issues raised in the Decision are the subject of conflicting decisions within the Second Circuit. Third, a direct appeal would materially advance the progress of the instant litigation.

On July 29, 2020, Jovita Carranza, in her capacity as the Administrator for the U.S. Small Business Administration (the "Defendant"), filed a response in opposition to the Plaintiffs' Request in which she argues the Plaintiffs have failed to demonstrate the Decision meets the statutory criteria for direct appeal (doc. # 76, the "Response"). The Plaintiffs filed a reply on the same date (doc. # 77, the "Reply").

For the reasons articulated below, the Court finds its Decision meets the criteria set forth in 28 U.S.C. § 158(d)(2)(A)(i) and (ii). Accordingly, this Court determines it is statutorily bound under 28 U.S.C. § 158(d)(2)(B) to certify the issue for direct appeal to the Second Circuit.

## PROCEDURAL HISTORY

The Request includes a recitation of the entire procedural history in these proceedings, so the Court does not repeat it here. The salient procedural events are as follows: The Plaintiffs commenced this adversary proceeding to assert their claim, among others, that the Defendant's refusal to grant the Plaintiffs access to funds under the Payroll Protection Program (the "PPP"), which was enacted by the CARES Act [Pub. L. 116-136, 134 Stat. 281 (2020)], violated their rights under § 525 of the Bankruptcy Code. They asked the Court to enter an injunction to remedy this violation. The Court entered memoranda of decision and orders in the two adversary proceedings granting the Plaintiffs a temporary injunction and extending the injunctions twice. After considering the declarations, affidavits and other exhibits filed in connection with the Plaintiffs' motions for summary judgment, as well as the extensive oral arguments

---

[1] Since the documents filed in the two adversary proceedings are generally identical, for simplicity, the Court cites only the docket references in AP # 20-1003.

presented on June 10, 2020, this Court entered the Decision on June 22, 2020, (doc. ## 63, 64) determining the Defendant's conduct constituted prohibited discrimination under 11 U.S.C. § 525, the Plaintiffs were entitled to summary judgment on that claim, and the Plaintiffs had met their burden for entry of an injunction that compelled the Defendant to process the Plaintiffs' applications for PPP funds without regard to the Plaintiffs' status as bankruptcy debtors.

On July 6, 2020, the Defendant filed a notice of appeal. On July 27, 2020, the Court entered a scheduling order granting that aspect of the Plaintiffs' Request that sought shortened notice, determining no hearing was necessary, and setting deadlines of the morning of July 29, 2020, for the Defendant to file either a statement of no objection or memorandum of law in opposition to the Request, and the afternoon of July 29, 2020, for the Plaintiffs to file a reply if the Defendant filed opposition to the Request. The Defendant filed a timely response and the Plaintiffs filed a timely reply. The matter is thus fully submitted.

## DISCUSSION

The Plaintiffs seek certification for the appeals the Defendant has filed with the United States District Court for the District of Vermont to instead be heard, in the first instance, by the Second Circuit Court of Appeal.

Section 1233 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) amended 28 U.S.C. § 158(d) to permit direct appeal of a bankruptcy court order or judgment to the appropriate court of appeals "if the bankruptcy court certifies that either '(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision … or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case." Weber v. United States Tr., 484 F.3d 154, 157 (2d Cir. 2007) (quoting 28 U.S.C. § 158(d)(2)(A)(i)-(iii)). "Notably, this certification standard is not discretionary" and a bankruptcy court should certify the appeal if it concludes that any one of the listed criteria is met. GE Capital Corp. v. Mukamal, 2017 U.S. Dist. LEXIS 186511, *5 (S.D. Fla. Nov. 9, 2017); see also In re General Motors Corp., 409 B.R. 24, 27 (Bankr. S.D.N.Y. 2009). See 28 U.S.C. § 158(d)(2)(B) ("If the bankruptcy court … on its own motion or on the request of a party, determines that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists … then the bankruptcy court … shall make the certification described in subparagraph (A).") (emphasis added). The first element of 28 U.S.C. § 158(d)(2)(A) is written in the disjunctive, conferring jurisdiction for direct appeal if clause (i), (ii) or (iii) is met; if any of those clauses is established, as to any question of law involved in the underlying judgment, order or decree, this Court must certify the appeal of its Decision for direct appeal, pursuant to

3

28 U.S.C. § 158(d)(2)(B). Therefore, the Court must first determine whether any of the questions raised by this appeal satisfy at least one of these three criteria and, if so, certify its Decision for direct appeal.

The Defendant identifies the five issues presented on appeal as follows:

1. Whether the bankruptcy court lacked subject matter jurisdiction over Plaintiff's claims against the SBA under 28 U.S.C. § 1334(b).

2. Whether the bankruptcy erred in finding that sovereign immunity was waived to permit the bankruptcy court to enjoin the SBA.

3. Whether the bankruptcy court erred in finding that the SBA violated section 525 of the Bankruptcy Code by denying loan guarantees under the Payment Protection Program (PPP) to debtors in bankruptcy.

4. Whether the bankruptcy court erred in concluding that the Plaintiff had demonstrated irreparable harm.

5. Whether the bankruptcy court erred in finding the Plaintiff met its burden of proof with respect to its request for a permanent injunction.

Doc. # 67, p. 2. The Plaintiffs' Request asserts that the issues on appeal raise questions that satisfy the direct appeal criteria, especially those questions which arise from the Defendant's claim of sovereign immunity and this Court's interpretation of the Bankruptcy Code's anti-discrimination provision, 11 U.S.C. § 525.

In her Response, the Defendant asserts certification should be denied primarily because the "Second Circuit would benefit from a district court decision based upon additional briefing by the parties in its consideration of the question of whether SBA's rule excluding debtors from [the PPP] loans based on the risk of unauthorized use of funds or non-repayment violates 11 U.S.C. § 525(a)" and challenges the Plaintiffs' position on each of the elements they must establish for certification of a direct appeal (doc. # 76, p. 1). In their Reply, the Plaintiffs offer counter arguments regarding each of the direct appeal criteria.

This Court must determine both whether the Request is properly before this Court and, if so, whether the circumstances set forth in the controlling statute exist. The Court will first address whether the procedural prerequisites have been satisfied and then turn to the merits of the Request.

A. THE PLAINTIFFS SATISFY THE PROCEDURAL PREREQUISITES

Federal Bankruptcy Rule 8006 establishes the procedure for certification of a direct appeal under 28 U.S.C. § 158(d)(2). Critical among the procedural requirements is <u>when</u> the request for certification must be filed. The Rule instructs it "must be filed with the clerk of the court where the matter is pending within 60 days after the entry of the judgment, order, or decree." Fed. R. Bankr. P. 8006(f)(1). See also 28 U.S.C. § 158(d)(2)(E). This Court issued its Decision on June 22, 2020, and the Plaintiffs filed the Request 35 days later, on July 27, 2020. Since the Request was filed fewer than 60 days after issuance of

4

the subject Decision, it was timely under Rule 8006(f)(1). The other pertinent procedural mandate concerns <u>where</u> the request for certification must be filed. The Rule requires it must be filed in the court "where the matter is pending" and specifies that "a matter remains pending in the bankruptcy court for 30 days after … the first notice of appeal from the judgment, order, or decree for which direct review is sought." Fed. R. Bankr. P. 8006(b). Since the Defendant filed the notice of appeal on July 6, 2020, this proceeding remains pending in this Court for 30 days after that date, or August 5, 2020, and therefore the Request has been filed in the proper court. Consequently, the Court finds the Request satisfies the procedural prerequisites of Rule 8006 and 28 U.S.C. § 158(d)(2).

    B.  THE PLAINTIFFS SATISFY THE CERTIFICATION CRITERIA OF 28 U.S.C. § 158(D)(2)(A)(i) and (ii)

The statute that establishes the criteria for determining whether a direct appeal is warranted is 28 U.S.C. § 158(d). It states:

> (d)
> > (1) The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.
> > (2)
> > > (A) The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that—
> > > > (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, <u>or</u> involves a matter of public importance;
> > > > (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; <u>or</u>
> > > > (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case <u>or</u> proceeding in which the appeal is taken;
> > > and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.
> > > (B) If the bankruptcy court, the district court, or the bankruptcy appellate panel—
> > > > (i) on its own motion or on the request of a party, determines that a circumstance specified in clause <u>(i), (ii), or (iii)</u> of subparagraph (A) exists; or
> > > > (ii) receives a request made by a majority of the appellants and a majority of appellees (if any) to make the certification described in subparagraph (A);
> > > then the bankruptcy court, the district court, or the bankruptcy appellate panel <u>shall</u> make the certification described in subparagraph (A).

5

(C) The parties may supplement the certification with a short statement of the basis for the certification.
(D) An appeal under this paragraph does not stay any proceeding of the bankruptcy court, the district court, or the bankruptcy appellate panel from which the appeal is taken, unless the respective bankruptcy court, district court, or bankruptcy appellate panel, or the court of appeals in which the appeal is pending, issues a stay of such proceeding pending the appeal.
(E) Any request under subparagraph (B) for certification shall be made not later than 60 days after the entry of the judgment, order, or decree.

28 U.S.C. § 158(d) (emphases added). The Court will address each of the criteria articulated in subsection (d)(2)(A) to determine if certification is warranted here.

*1. No Controlling Law*

The first ground the Plaintiffs assert in support of their Request for certification is that the Decision involves questions of law "as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States …" 28 U.S.C. § 158(d)(2)(A)(i). The Plaintiffs argue the question of sovereign immunity waiver presents a threshold question of law that is not heavily dependent on the particular facts of this case and for which no controlling authority exists, as the Decision relied on Ulstein Maritime, Ltd. v. United States, 833 F.2d 1052 (1st Cir. 1987) and there is no Second Circuit or Supreme Court decision that squarely resolves the scope of 15 U.S.C. § 634(b)(1) as it relates to injunctive relief under the Bankruptcy Code. In her Response, the Defendant asserts that four Supreme Court cases – United States v. Sherwood, 312 U.S. 584, 589 (1941), United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003), Lane v. Pena, 518 U.S. 187 (1996), and United States v. Nordic Village, Inc., 503 U.S. 30 (1992) – supply controlling legal precedent on the question of whether Plaintiffs' claims are barred by the doctrine of sovereign immunity. The Plaintiffs contend in their Reply that these Supreme Court cases are not dispositive because courts continue to cite Ulstein and discuss the circuit split on the issue.

Direct appeal is "most appropriate" where the court of appeals is "called upon to resolve a question of law not heavily dependent on the particular facts of a case[.]" Weber, 484 F.3d at 158. "Controlling law for the purposes of section 158(d)(2)(A)(i) is that which admits of no ambiguity in resolving the issue" and "may be supplied by combining holdings from multiple cases." In re Millennium Lab Holdings II, LLC, 543 B.R. 703, 708 (Bankr. D. Del. 2016) (citations omitted). The Second Circuit has indicated it "will be most likely to exercise [its] discretion to permit a direct appeal where there is uncertainty in the bankruptcy courts (either due to the absence of a controlling legal decision or because conflicting decisions have created confusion)[.]" In re Gravel, 2019 Bankr. LEXIS 2576, *13, 2019 WL 3783317 (Bankr. D. Vt. Aug. 12, 2019) (citing Weber, 484 F.3d at 161).

6

In the Decision, this Court concluded that §§ 105, 106, and 525 of the Bankruptcy Code abrogated the Defendant's sovereign immunity and authorized the Court to enjoin the Defendant from taking any action this Court found to be a violation of § 525(a). The Court reaffirmed its reliance on Ulstein in concluding it was not barred from entering a carefully crafted injunction against the SBA by principles of sovereign immunity or 15 U.S.C. § 634(b)(1) (doc. # 63, pp. 25–26). The Court agrees with the Plaintiffs that the question of sovereign immunity waiver is not heavily dependent on the particular facts of this case. Further, the question of whether sovereign immunity precludes entry of an injunction against the Defendant on the Plaintiffs' §525(a) claims is clearly a fundamental issue here, and there is no controlling Second Circuit or Supreme Court decision that harmonizes §§ 105 and 106 of the Bankruptcy Code with 15 U.S.C. § 634(b)(1). Although the Defendant cites the above four Supreme Court cases for the general propositions that only Congress can waive sovereign immunity and statutory waivers of sovereign immunity must be express and unequivocal (see doc. # 56, p. 17), those cases do not resolve the question here as to the scope of the statutory provisions at issue.

The Court is thus persuaded that certification is warranted as to the first criterion set out in 28 U.S.C. § 158(d)(2)(A)(i), due to the absence of controlling decisions on one of the salient legal questions addressed in the Decision and raised on appeal.[2]

### 2. *A Matter of Public Importance*

The Plaintiffs next argue, as an additional ground for certification of a direct appeal, that the sovereign immunity and discrimination questions of law adjudicated in the Decision involve "a matter of public importance," and thus satisfy the alternative criterion described in 28 U.S.C. § 158(d)(2)(A)(i).

The Plaintiffs assert that numerous, significant public interests are implicated in these appeals, as timely access to the PPP funds would ensure their continued operation and ability to provide vital health care services and employ hundreds of people in the community, and would align with the purpose of the CARES Act to provide PPP funds to ensure American workers continue to be paid during the economic impact of Covid-19, not after it is too late. In her Response, the Defendant argues the Plaintiffs have not established public importance here for three reasons: (i) the outcome of this appeal has significance only

---

[2] Additionally, "conflicting decisions across circuits are germane to § 158(d)(2)(A)(i)[.]" Gravel, 2019 Bankr. LEXIS 2576 at *21. As this Court indicated in its Decision, it was aware of 34 other pending or recently decided PPP-related proceedings that addressed § 525(a), including two other proceedings within the Second Circuit. Of those 34 proceedings, three were awaiting decision or had been voluntarily dismissed prior to a ruling on the merits, 12 had been decided in favor of the plaintiffs, and 19 had denied injunctive relief to the plaintiffs, with 11 of those 19 denials emanating from within the Third, Fourth, Fifth, and Sixth Circuits, where the Defendant asserted circuit precedent precluded application of § 525(a) to the PPP (doc. # 63, pp. 9, 13). This Court determined the Second Circuit in Stoltz chose not to follow the limited view of § 525(a) articulated by those four other circuit courts (doc. # 63, p. 22). Additionally, this Court observed that at least one of the recent PPP decisions issued outside of the Second Circuit found the Stoltz rationale did not compel application of § 525 to the PPP (doc. # 63, pp. 19–20, fn. 13; see USA Gymnastics, 20-ap-50055 (Bankr. S.D. Ind. June 12, 2020)). While not dispositive, the Court finds these conflicting decisions outside the Second Circuit provide additional support for direct certification under 28 U.S.C. § 158(d)(2)(A)(i).

"to the <u>private</u> <u>entities</u> at issue in this appeal and some entities and individuals these private entities may serve"; (ii) "Congress has currently set the PPP program to end by August 8, 2020," and "direct appeal to the Second Circuit is unlikely to provide any clarity to the public before the PPP ends"; and (iii) the Defendant is unaware of any other pending cases in Vermont challenging the denial of PPP funds based on the applicant's status as a bankruptcy debtor (doc. # 76, p. 4) (emphasis in original). The Plaintiffs contend in their Reply that direct appeal is a matter of public importance here because these appeals are not simply about two companies trying to collect money; rather, they implicate fundamental issues about discrimination against debtors, access to emergency funding Congress provided in the midst of an economic and public health crisis, and the long-term viability of entities that are two of the largest employers in their community and that provide essential medical services at a time when such services are more important than ever.

"Public importance exists when the matter on appeal transcends the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." <u>Mark IV Indus., Inc. v. N.M. Env't Dep't</u>, 452 B.R. 385, 388 (S.D.N.Y. 2011); <u>see</u> also <u>Millennium Lab Holdings II</u>, 543 B.R. at 709. "An appeal that impacts only the parties, and not the public at large, is not a matter of public importance." <u>Mark IV Indus.</u>, 452 B.R. at 388. <u>Accord</u> <u>In re Sabine Oil & Gas Corp.</u>, 551 B.R. 132, 140 (Bankr. S.D.N.Y. 2016). Courts have struggled to define what types of legal questions satisfy the "public importance" criterion of § 158(d)(2). "Simply because a matter is important to certain members of the public does not render it a matter of 'public importance' that meets the standard for direct certification." <u>Sabine Oil & Gas</u>, 551 B.R. at 142. "There is no Congressional guidance and only scant case law that addresses precisely what qualifies as a matter of public importance under § 158(d)(2), but there is no question it should be invoked only in narrow circumstances." <u>Jaffe v. Samsung Elecs. Co. (In re Qimonda AG)</u>, 470 B.R. 374, 387 (E.D. Va. 2012). The leading bankruptcy treatise notes "[t]he bar for certification under this standard should be set high." <span style="font-variant:small-caps">Collier on Bankruptcy</span> ¶ 5.06[4][b] (16th ed. 2019). The treatise goes on to provide several examples that could satisfy the public importance criterion:

> Such things as the constitutionality of a provision of title 11, the applicability of nonbankruptcy law to matters arising in a bankruptcy case, the ability to change the venue of a title 11 case to an improper venue or any one of the important provisions governing consumer bankruptcies come immediately to mind as matters that might be considered as being of public importance. <u>Alternatively, a court might find a matter to be of public importance if it could impact a large number of jobs or other vital interest in a community</u>.

<u>Id.</u> (emphasis added).

8

Here, as essential health care providers in their service area that play a crucial role in combatting Covid-19, and as two of the largest employers in their region, whether the Plaintiffs have access to PPP funds is a matter of public importance in the Vermont and New Hampshire regions these two Plaintiffs serve for precisely the reason articulated in COLLIER – the outcome of these appeals will impact both a large number of jobs in the community and the community's vital interest in continued access to health care services during a pandemic. Moreover, the CARES Act was enacted for the benefit of the entire American public, and it created the PPP to provide financial assistance to myriad businesses suffering economic distress as a result of Covid-19. The CARES Act, at its core, was intended to protect the public, to the maximum extent possible, from the health and financial fallout of the pandemic, and to mitigate the potentially catastrophic consequences of the coronavirus on the American economy. Issues arising under the CARES Act and the PPP cast a wide net across the public at large and construing its proper implementation has public significance.

The Court is not persuaded by the Defendant's argument that the outcome has significance only to the Plaintiffs and "some entities and individuals these private entities may serve," when such individuals include not only patients and communities throughout southeastern Vermont and southwestern New Hampshire, but also approximately 671 employees (see doc. # 63, p. 5). Nor is the Court persuaded by the Defendant's argument that the Second Circuit cannot provide clarity to the public because the PPP is scheduled to end by August 8, 2020. While that expiration date is accurate at this time, Congress is currently considering an extension of many of the benefits of the CARES Act and therefore it is impossible to predict if or when access to PPP funds will terminate. If the PPP is continued, a direct appeal will additionally impact public interests because the Plaintiffs – and any other health care business debtors that would be eligible for PPP funds if they were not in bankruptcy cases – will know if they have access to PPP funds and can plan or expand services accordingly. However, even if Congress does not extend the PPP and PPP funds are not available after August 8, 2020, there would be no less impact on the public who depend on the Plaintiffs' ongoing viability: patients, employees, and those who may need care in the future. That is crucial. Finally, the Court is not persuaded by the Defendant's argument based on the absence of other Vermont debtors that have similarly challenged a denial of PPP funds. This Court observes that another chapter 11 debtor in this District has applied for PPP funds and its application was granted, notwithstanding its status as a bankruptcy debtor, which raises a question that transcends these Plaintiffs as to the disparate treatment of Vermont bankruptcy debtors seeking PPP funds.[3]

---

[3] In the subchapter V chapter 11 case of Anichini, Inc., the Debtor and case trustee filed a stipulation, which the Court approved, indicating the Debtor had applied for PPP funds, its application was "accepted," and they intended to use the funds in the manner required for the "loan" to be forgiven (case # 20-10089, doc. ## 81, 84).

Therefore, the Court concludes the questions raised on appeal as to the Plaintiffs' eligibility for PPP funds and the applicability of § 525 also meet the public importance criterion included as the second element of § 158(d)(2)A)(i).

*3. Conflicting Decisions*

The Plaintiffs assert direct certification is further warranted because the Decision "involves a question of law requiring resolution of conflicting decisions." 28 U.S.C. § 158(d)(2)(A)(ii). The Plaintiffs argue there are conflicting decisions within the Second Circuit as to the question of whether § 525(a) of the Bankruptcy Code applies to the PPP, because the United States District Court for the Western District of New York has concluded that "the SBA did not run afoul of §525(a) in adopting the bankruptcy exclusion under the PPP," Diocese of Rochester v. U.S. Small Bus. Admin., 2020 U.S. Dist. LEXIS 101694, *2, 2020 WL 3071603 (W.D.N.Y. Jun. 10, 2020), which is directly opposite to this Court's holding on the same issue in its Decision. The Plaintiffs further assert the different analyses of Stoltz v. Brattleboro Housing Auth. (In re Stoltz), 315 F.3d 80 (2d Cir. 2002), and In re Goldrich, 771 F.2d 28 (2d Cir. 1985), in this Court's Decision, as compared to that of the district court in Diocese of Rochester, may also present a conflicting question of law for the Second Circuit to resolve on direct appeal. In her Response, the Defendant argues that since there are only two decisions in this Circuit, the instant Decision and Diocese of Rochester, "this Court should let the case law evolve and allow the Vermont District Court to examine the Diocese of Rochester case," which "may eliminate the existence of conflicting decisions within the Second Circuit" (doc. # 76, p. 5). The Plaintiffs contend in their Reply that the existing conflict is sufficient to warrant direct appeal, and that "even if the Vermont District Court overturned this Court's [Decision, it does] not disappear, but rather [is] then appealed for review by the Second Circuit ... [t]hus, nothing that happens at the Vermont District Court ... is likely to eliminate today's conflict" (doc. # 77, p. 4).

The parties correctly observe that the relevant inquiry under 28 U.S.C. § 158(d)(2)(A)(ii) is whether conflicting decisions exist within the Second Circuit. As this Court previously opined, "[m]ost of the caselaw from courts within the Second Circuit adjudicating requests for certification of a direct appeal shows conflicting decisions from outside this circuit do not satisfy the criterion for certification under 28 U.S.C. § 158(d)(2)(A)(ii)." Gravel, 2019 Bankr. LEXIS 2576 at *19–20 (collecting cases). This position is also supported by the authors of the leading bankruptcy treatise. Id. at *20–21 (citing COLLIER ON BANKRUPTCY ¶ 5.06[4][c]).

In the Decision, this Court concluded that Stoltz denoted the Second Circuit's departure from – and disapproval of – its earlier narrow construction of § 525(a) in Goldrich. This Court further determined that, even absent that conclusion, the PPP was only superficially similar to the commercial extension of

10

credit at issue in Goldrich, and was in fact much more akin to the public housing lease at issue in Stoltz. Based on the Second Circuit's reasoning in Stoltz, this Court held the PPP was an "other similar grant" within the meaning of § 525(a) (doc. # 63, pp. 17–18, 20). As this Court observed in its Decision, the district court in Diocese of Rochester cited Goldrich and Stoltz and briefly addressed Congressional disapproval of Goldrich only in a footnote, and it did not further analyze those cases in its decision. It then denied the plaintiffs' request for preliminary injunction and granted summary judgment in favor of the defendant on the plaintiffs' APA and § 525(a) claims (see doc. # 63, pp. 10, 13, n.10), holding that "[p]articipation in the PPP bears no resemblance to any of the property interests enumerated in § 525(a)." Diocese of Rochester, 2020 U.S. Dist. LEXIS 101694 at *27.

The district court's conclusion in Diocese of Rochester is in direct contrast to this Court's determination that the PPP does fall within the scope of § 525(a) of the Bankruptcy Code, and thus conflicting decisions exist within the Second Circuit. The Defendant has conceded the existence of these conflicting decisions (see doc. # 76, p. 5), but argues the Court should nonetheless deny the Request. As the Court noted above, the certification standard is not discretionary and this Court must certify the appeal of its Decision for direct appeal, pursuant to 28 U.S.C. § 158(d)(2)(B), if the Plaintiffs meet the "conflicting decisions" criterion set forth in 28 U.S.C. § 158(d)(2)(A)(ii). The Plaintiffs have established that criterion with respect to the question of the application of § 525(a) of the Bankruptcy Code to the PPP, based on the conflict between the Decision and Diocese of Rochester, and speculation as to whether the District Court would overturn the Decision does not erase that existing conflict.

Accordingly, the Plaintiffs have also demonstrated certification is warranted under 28 U.S.C. § 158(d)(2)(A)(ii), due to the conflicting decisions regarding one of the salient legal questions raised.

### 4. *Materially Advances the Progress of the Case or Proceeding*

The Plaintiffs cite 28 U.S.C. § 158(d)(2)(A)(iii) as an additional basis for certification of direct review, as an immediate appeal may materially advance the progress of this case or proceeding. The Plaintiffs argue a direct appeal will materially advance this case by allowing the Plaintiffs earlier access to the PPP money pursuant to the Decision and thus facilitate their reorganizations. The Plaintiffs further argue a direct appeal will materially advance other cases as well, since courts at all levels nationwide are interpreting and applying § 525 to the PPP in different ways, and a Second Circuit decision would provide precedent within this circuit, as well as persuasive case law for other circuits grappling with the § 525 questions. The Defendant argues in her Response that proceeding directly to the Second Circuit will not advance the litigation efficiently or responsibly, and briefing and argument before the District Court would allow for a full vetting of the important legal issues at stake and assist the Second Circuit in

11

making a decision, if a subsequent appeal were taken.[4] In their Reply, the Plaintiffs assert this is not simply an issue of speed or efficiency for a party; rather, these appeals include significant public policy and public health components that affect debtors and businesses around the country, and would meaningfully illuminate the legal issues for other courts.

While the statute provides for "expeditious resolution of bankruptcy cases" through direct circuit court review, the Second Circuit has found this "privilege[s] speed over other goals [and] speed is not necessarily compatible with [the] ultimate objective – answering questions wisely and well." Weber, 484 F.3d at 160. Hence, arguments emphasizing that direct appeal is a faster resolution of the legal questions, and thus might shorten the timeline for reorganization, or is simply a more efficient route to the circuit court, are not sufficient on their own to satisfy the criterion set out in 28 U.S.C. § 158(d)(2)(A)(iii). See, e.g., Sabine Oil & Gas, 2016 U.S. Dist. LEXIS 147710 at **7–8 (movant's desire "to skip" district court review is not grounds for certification where Second Circuit has instructed that bankruptcy cases "should normally percolate through the District Court before proceeding to the Court of Appeals."); In re Johns-Manville Corp., 449 B.R. 31, 34 (S.D.N.Y. 2011) (rejecting movant's argument that direct certification would be "quicker because it need only be heard by one court" as "[t]hat argument can be made in every case where there is an appeal involving a final judgment of the Bankruptcy Court."); Millennium Lab Holdings II, 543 B.R. at 716–17 (finding "even the near certainty that this appeal will ultimately end up before the [Court of Appeals] is not a basis on which to certify the order.").

The Second Circuit has addressed the benefits to be gained by adhering to the normal two-step appellate process for bankruptcy appeals:

> In many cases involving unsettled areas of bankruptcy law, review by the district court would be most helpful. Courts of appeals benefit immensely from reviewing the efforts of the district court to resolve such questions … We believe that Congress was aware of the dangers of leapfrogging the district court in the appeals process. Initially divided over whether to make direct appeals mandatory in certain circumstances, or to grant discretion to the courts of appeals to accept or decline such appeals, Congress wisely adopted the latter path, probably in recognition of the salutary effects of allowing some cases to percolate through the normal channels.

Weber, 484 F.3d at 160. To that end, the Second Circuit stated,

> [W]e will be most likely to exercise our discretion to permit a direct appeal where there is uncertainty in the bankruptcy courts (either due to the absence of a controlling legal decision or because conflicting decisions have created confusion) or where we find it patently obvious that the bankruptcy court's decision is either manifestly correct or incorrect, as in such cases we benefit less from the case's prior

---

[4] The Defendant further contends that any argument by the Plaintiffs that speed or efficiency is required is undercut by the fact that the Plaintiffs waited more than a month after this Court issued its Decision to seek certification. The Court finds this argument to be without merit. The Plaintiffs filed a timely request for certification, and the Court does not read any motives or rationale into that timing in assessing the merits of their Request.

12

> consideration in the district court and we are more likely to render a decision expeditiously, thereby advancing the progress of the case. On the other hand, we will be reluctant to accept cases for direct appeal when we think that percolation through the district court would cast more light on the issue and facilitate a wise and well-informed decision.

Id. at 161.

Here, although the Plaintiffs persuasively argue that courts at all levels nationwide are grappling with applying § 525 to the PPP and would benefit from a direct appeal, as this Court noted above, conflicting decisions across circuits are more pertinent to the first 28 U.S.C. § 158(d)(2)(A)(i) criterion. Further, while the Court agrees these appeals include significant public policy and public health components, as discussed above, those properly pertain to the second criterion set forth in 28 U.S.C. § 158(d)(2)(A)(i). The Plaintiffs' only argument germane to 28 U.S.C. § 158(d)(2)(A)(iii) is that a direct appeal would "materially advance this litigation by allowing the [Plaintiffs] earlier access to the PPP money under the [Decision], a benefit that also aids the [Plaintiffs'] reorganizations" (doc. # 73, p. 12). However, speedier resolution of the proceeding is an insufficient basis for direct appeal, and the Plaintiffs have not demonstrated that their underlying bankruptcy cases are unable to proceed without resolution of the appeal. See Millennium Lab Holdings II, 543 B.R. at 717 ("resolution of the issue will not materially advance the case when the underlying bankruptcy case is proceeding regardless of the appeal") (citing Am. Home Mortg. Inv. Corp. v. Lehman Bros. (In re Am. Home Mortg. Inv. Corp.), 408 B.R. 42, 44 (D. Del. 2009)).

In sum, the Court finds the Plaintiffs have not established the criterion for direct appeal set out in 28 U.S.C. § 158(d)(2)(A)(iii).

## CONCLUSION

After considering the Plaintiffs' arguments in favor of certification, and the Defendant's arguments in opposition to certification, the Court finds the Plaintiffs have established the required criteria for certification. For the reasons expressed above, the Court finds its Decision involves (a) a question of law as to which there is no controlling decision of the United States Court of Appeals for the Second Circuit or the Supreme Court of the United States and (b) a matter of public importance, and therefore it satisfies both of the alternative eligibility criteria set forth in 28 U.S.C. § 158(d)(2)(A)(i). The Court also finds the Decision involves a question of law requiring resolution of conflicting decisions within the Second Circuit, and thus it satisfies the criterion set forth in 28 U.S.C. § 158(d)(A)(ii). Since the Plaintiffs needed to establish only one of the criteria, certification is both proper and required by 28 U.S.C. § 158(d)(2)(B). These matters now proceed to the Second Circuit Court of Appeals, for it to determine if it will authorize a direct appeal.

    This memorandum constitutes the Court's findings of fact and conclusions of law, granting the Plaintiffs' Request for certification of this matter for direct review by the Second Circuit Court of Appeals, pursuant to Federal Rule of Bankruptcy Procedure 8006 and 28 U.S.C. § 158(d)(2).

July 31, 2020  
Burlington, Vermont

                                                                       Colleen A. Brown  
                                                                      United States Bankruptcy Judge